**Reversed & Dismissed in part and Render in part & Remand and Opinion Filed October 28, 2013**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-11-01522-CV**
_____

**ATI ENTERPRISES, INC., d/b/a ATI CAREER TRAINING CENTER, Appellant/Cross-Appellee**
**V.**
**SHAHBAZ F. DIN, Appellee/Cross-Appellant**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-09-07508**

## OPINION

Before Justices FitzGerald, Fillmore, and Richter[1]
Opinion by Justice FitzGerald

Appellee Shahbaz F. Din sued his former employer, appellant ATI Enterprises, Inc., d/b/a ATI Career Training Center, for national-origin discrimination and retaliation. A jury found in Din's favor on both claims, and the trial judge rendered judgment in favor of Din. ATI appeals, and Din cross-appeals. We reverse the judgment, dismiss Din's retaliation claim for lack of subject-matter jurisdiction, render judgment that Din take nothing on his claims for mental-anguish damages and for punitive damages, and remand the case for further proceedings.

---

[1] The Hon. Martin Richter, Retired Justice, sitting by assignment.

## I. BACKGROUND

### A. Facts

The following facts are drawn from the evidence introduced at trial except as otherwise noted. Din was born and raised in Pakistan. Before coming to the United States, he became a licensed physician specializing in ophthalmology. In the late 1990s, Din came to the United States and worked at UT Southwestern as an assistant visiting professor in ophthalmology for eighteen months.

ATI operates schools in Texas and other states. It trains students for jobs in the medical field such as respiratory therapists and medical assistants. In 2001, ATI hired Din to teach in ATI's respiratory program. Din worked for ATI continuously until 2007. In April 2007, the position of Medical Assistants Program Director came open at Din's school. Din expressed an interest in the position, but he was not selected. The first person chosen for the position was Richard Hubner, who was a doctor of osteopathy. He left soon thereafter, and in May 2007 ATI replaced him with Kristina Cedillo. She also left soon afterwards, in late June or early July, and ATI replaced her with Corlette Coleman. Cedillo had only a vocational degree; Coleman did not graduate from college.

On July 3, 2007, Din went to an EEOC office and filled out a charge questionnaire, EEOC Form 283. In that document, he asserted that ATI had discriminated against him. In his narrative description of ATI's discriminatory conduct, Din reported that ATI had "bypassed" him by giving a director position to other employees who were less qualified.

ATI fired Din on August 15, 2007. The next day, August 16, he went to the EEOC again and filled out another charge questionnaire. In that questionnaire, Din reported that he had been denied a promotion on August 1 and that he had been discharged on August 15. Also on August

16, Din signed a document called "Charge of Discrimination," EEOC Form 5, in which he alleged that ATI had refused to promote him and fired him because of his national origin.[2]

## B.      Procedural history

Din sued ATI in June 2009.  Pretrial proceedings included several motions for partial summary judgment by ATI.  Din's live pleading at the time of trial was his fourth amended petition.  In that pleading, Din asserted a claim for "promotion discrimination" based on his race and his national origin under Chapter 21 of the Texas Labor Code.[3]  He also asserted a claim for wrongful termination in retaliation for his making a good-faith claim with the EEOC.  He sought compensatory and exemplary damages, interest, and attorney's fees.

The case was tried to a jury, which found the following facts:

- Din's national origin was a motivating factor in ATI's decision not to promote him.

- ATI would not have decided not to promote Din when it did in the absence of the impermissible motivating factor (his national origin).

- ATI discharged Din because Din filed a charge of discrimination with the EEOC on July 3, 2007.

- As a result of ATI's conduct, Din suffered damages in the amounts of $234,600 in back pay, $102,000 in past emotional pain and suffering, and $102,000 in future emotional pain and suffering.

The jury also found by clear and convincing evidence that ATI acted with malice or reckless indifference to Din's rights, and it awarded Din punitive damages of $500,000.

ATI filed a motion for judgment notwithstanding the verdict.  The trial judge then signed a judgment granting ATI's motion in part.  In that judgment, the judge reduced the award of back pay to $83,429.17, awarded Din $300,000 for other compensatory damages and punitive

---

[2] This document was part of the summary-judgment record but was not admitted at trial.

[3] Chapter 21 was formerly known as the Texas Commission on Human Rights Act or TCHRA, but the Texas Commission on Human Rights was abolished in March 2004.  *See Thomann v. Lakes Reg'l MHMR Ctr.*, 162 S.W.3d 788, 795–96 n.4 (Tex. App.—Dallas 2005, no pet.). Courts still sometimes refer to Chapter 21 as TCHRA.  *See, e.g.*, *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 502–03 n.1 (Tex. 2012).

damages combined,[4] and awarded $42,750.40 in prejudgment interest on the award of back pay. ATI timely filed a motion for new trial, and within his plenary power the judge signed an amended judgment in which he awarded Din the amounts listed above, plus taxable costs of $13,330.35. Thus, the total judgment amount is $439,509.92.

ATI timely filed a notice of appeal, and Din timely filed his own notice of appeal pertaining to the trial judge's denial of Din's requests for attorney's fees and for prejudgment interest on the award of compensatory damages.

## II. ANALYSIS OF ATI'S ISSUES

ATI raises twelve issues on appeal. Its first three issues attack the judgment with respect to Din's claim for retaliation. Issues four, seven, eight, nine, eleven, and twelve attack various rulings admitting and excluding evidence. Issues five and six attack the sufficiency of the evidence to support certain jury findings. Issue ten attacks the damages findings and awards in several respects.

### A. Exhaustion of administrative remedies

In its first issue, ATI argues that the trial court erred by denying ATI's motion for partial summary judgment challenging the court's subject-matter jurisdiction over Din's retaliation claim. ATI contends that the court lacked jurisdiction because Din failed to exhaust his administrative remedies as to the retaliation claim. We note that ATI also raised this jurisdictional challenge to Din's retaliation claim in ATI's motion for judgment notwithstanding the verdict.

---

[4] *See* TEX. LAB. CODE ANN. § 21.2585(d) (West 2006) (capping the amount of damages that may be awarded for punitive damages and certain categories of compensatory damages).

–4–

### 1. Scope and standard of review

Ordinarily we do not review an order denying summary judgment on an appeal after a trial on the merits. *See, e.g.*, *Reese v. Duncan*, 80 S.W.3d 650, 665 (Tex. App.—Dallas 2002, pet. denied). But ATI challenged the trial court's subject-matter jurisdiction again after trial in its motion for judgment notwithstanding the verdict, and in any event subject-matter jurisdiction cannot be waived and may be raised for the first time on appeal. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). Thus, ATI can urge its subject-matter jurisdiction argument on appeal.

This procedural posture is somewhat similar to that presented in *Texas Department of Public Safety v. Alexander*, 300 S.W.3d 62 (Tex. App.—Austin 2009, pet. denied). In that case, defendant TDPS filed a plea to the jurisdiction, which was denied. *Id*. at 68. TDPS took an interlocutory appeal, but the case was tried before the appeal could be resolved. *Id*. TDPS appealed the final judgment, and when the court of appeals considered TDPS's jurisdictional arguments in that appeal, it considered the entirety of the record in making its determination. *See id*. at 74 ("[W]e review the entire record to determine if any evidence supports jurisdiction."); *id*. at 76 n.13 (reviewing a claimant's trial testimony as part of jurisdictional analysis). Like the *Alexander* court, we will also consider the evidence adduced at trial to the extent it bears on ATI's jurisdictional argument.

We review a trial court's decision about its own subject-matter jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2002). With respect to fact issues bearing on the court's subject-matter jurisdiction, we review the entire record to determine whether any evidence supports the existence of jurisdiction. *Alexander*, 300 S.W.3d at 72 (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 446).

## 2. Applicable law

Chapter 21 of the Texas Labor Code creates a civil cause of action in favor of victims of specified unlawful employment practices. *See* TEX. LAB. CODE ANN. §§ 21.258–21.2585 (West 2006) (setting forth remedies for victims of unlawful employment practices). An employer commits an unlawful employment practice if it retaliates against a person who makes or files a charge under Chapter 21. *Id*. § 21.055(2).

A Chapter 21 claimant must exhaust administrative remedies before filing a civil action. *See id*. §§ 21.201–21.202; *see also Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 488 (Tex. 1991) ("[W]e conclude that exhaustion of administrative remedies is a mandatory prerequisite to filing a civil action alleging violations of the CHRA."), *overruled on other grounds by In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 310 (Tex. 2010) (orig. proceeding). Failure to exhaust administrative remedies creates a jurisdictional bar to proceeding with the claim. *See City of Waco v. Lopez*, 259 S.W.3d 147, 154 (Tex. 2008) ("[N]oncompliance [with Chapter 21's administrative procedures] deprives courts of subject-matter jurisdiction."); *Smith v. Univ. of Tex. Sw. Med. Ctr. of Dallas*, 101 S.W.3d 185, 188 (Tex. App.—Dallas 2003, no pet.).

A would-be Chapter 21 claimant must first file an administrative complaint with the civil rights division of the Texas Workforce Commission.[5] *See* TEX. LAB. CODE ANN. § 21.201(a) (stating that an aggrieved person "may file a complaint with the commission"); *id*. § 21.0015 (defining "commission" as "the Texas Workforce Commission civil rights division"); *Schroeder*, 813 S.W.2d at 486–88 (holding that administrative exhaustion is mandatory despite legislature's use of the word "may"). The complaint must be filed "not later than the 180th day after the date

---

[5] Before March 19, 2004, complaints were filed with the Texas Commission on Human Rights. *See* TEX. LAB. CODE ANN. § 21.0015 & historical and statutory notes.

the alleged unlawful employment practice occurred." TEX. LAB. CODE ANN. § 21.202(a); *see also Ashcroft v. HEPC–Anatole, Inc.*, 244 S.W.3d 649, 651 (Tex. App.—Dallas 2008, no pet.) ("[I]t is mandatory and jurisdictional that claims under the Texas Labor Code be filed no later than the 180th day after the date the alleged unlawful employment practice occurred."). Although the statute mentions only the civil rights division of the Texas Workforce Commission, regulations have expanded the claimant's options to include filing with the EEOC instead. *See* 40 TEX. ADMIN. CODE § 819.41(c) (providing that the complaint may be filed with the civil rights division or with an EEOC office). Thus, "[a] claimant may file a complaint with either the EEOC, the federal agency authorized to investigate charges of discrimination, or the TWC, the Texas equivalent." *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 504 n.4 (Tex. 2012).

When a claimant files suit under Chapter 21, he or she is limited to the "the specific issue made in the employee's administrative complaint and any kind of discrimination like or related to the charge's allegations." *Parker v. J.C. Penney Co.*, No. 05-03-01701-CV, 2005 WL 317758, at *3 (Tex. App.—Dallas Feb. 10, 2005, no pet.) (mem. op.) (internal quotations and citation omitted); *accord Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 807 (Tex. App.—Austin 2009, no pet.); *see also Tex. Dep't of Transp. v. Esters*, 343 S.W.3d 226, 230 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding that claimant exhausted administrative remedies "only as to the complaints made in the Original Charge and factually related claims that reasonably could be expected to grow out of the administrative investigation of that charge").

Retaliation is a distinct theory of liability that is not encompassed by other theories of discrimination. *See Poindexter*, 306 S.W.3d at 809 ("Retaliation is a different legal theory from race-based discrimination."); *Davis v. Educ. Serv. Ctr.*, 62 S.W.3d 890, 894 (Tex. App.—Texarkana 2001, no pet.) ("Retaliation is an independent violation of the TCHRA and occurs when an employer retaliates or discriminates against a person who makes or files a charge or

files a complaint."). In *Davis*, the claimant filed an EEOC charge against her employer alleging disability discrimination and sexual harassment, but then she sued under the TCHRA on a theory of retaliation. 62 S.W.3d at 892. The trial judge granted summary judgment against the claimant, and the court of appeals affirmed, holding that a TCHRA claimant must exhaust administrative remedies "even in retaliation cases." *Id.* at 894. The court rejected the claimant's argument that she should not have to exhaust her administrative remedies as to a retaliation claim if there is a direct relationship between the filing of a discrimination claim and the alleged retaliation. *Id.* Similarly, the claimant in *Poindexter* filed letters and a charge form with the EEOC alleging race discrimination, then later sued her employer on theories including retaliation. 306 S.W.3d at 803–05. The court of appeals concluded that the claimant's EEOC filings did not encompass her retaliation claim, and thus it held that the trial court lacked jurisdiction over the retaliation claim. *Id.* at 808–11.

Some appellate courts have held that a Chapter 21 claimant is not required to exhaust administrative remedies as to a retaliation claim if the retaliation occurs after the claimant has filed an EEOC charge alleging some other theory of illegal conduct. *See, e.g.*, *Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 141–42 (Tex. App.—Fort Worth 2000, pet. denied); *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 738 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The *Elgaghil* court cited the Fifth Circuit in support, reasoning that it would be impractical and redundant to require a separate administrative charge alleging retaliation for a prior charge. 45 S.W.3d at 141–42 (relying on *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. 1981)). But courts have declined to apply this rule when the claimant files his or her administrative charge after the alleged retaliation has already occurred.[6] *See, e.g.*, *Eberle v.*

---

[6] In *Parker*, we cited *Thomas* for the proposition that "[a] plaintiff may assert a retaliation claim without first filing a new or an amendment to an existing TCHR charge." 2005 WL 317758, at *3. But this broad statement was dicta in light of our holding that the claimant in *Parker* had

*Gonzales*, 240 Fed. App'x 622, 628 (5th Cir. 2007); *Lopez v. Tex. State Univ.*, 368 S.W.3d 695, 705–06 (Tex. App.—Austin 2012, pet. denied).

### 3. Application of the law to the facts

We next review the record to ascertain what issues Din raised in his administrative complaint. The record contains the two EEOC charge questionnaires that Din filed on July 3 and August 16, 2007. In the July 3 questionnaire, Din complained that he was passed over three times for the new director position, twice in favor of candidates who were "R.M.A."[7] as compared to his M.D. The questionnaire did not specifically ask Din to identify the alleged improper motive for the adverse employment action, and he included no allegation specifying ATI's improper motive for passing him over for the promotions. In the August 16 questionnaire, Din complained that he had been passed over again for the director position, and he also complained that he had been fired on August 15 and "was told that I am putting more hours on my time card." Again, Din included no allegation as to why ATI's motive for these adverse employment actions was improper. The questionnaires constitute no evidence that Din exhausted administrative remedies as to his retaliation claim.

The summary-judgment record also includes a document called "Charge of Discrimination," which is dated August 16, 2007. The relevant part of the document follows:

---

not actually pleaded a retaliation claim. *See id.* (holding that claimant had not exhausted failure-to-promote claim, nor had she alleged that her "failure to be promoted was the result of retaliation for filing the charge").

[7] There was evidence at trial that "R.M.A." means "registered medical assistant."

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | | | | | | DATE(S) DISCRIMINATION TOOK PLACE | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | Earliest | Latest |
| ☐ RACE | ☐ COLOR | ☐ SEX | ☐ RELIGION | ☒ NATIONAL ORIGIN | | 08-01-2007 | 08-15-2007 |
| ☐ RETALIATION | ☐ AGE | ☐ DISABILITY | | ☐ OTHER *(Specify below.)* | | ☐ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

PERSONAL HARM:
I was denied a promotion to the position of Medical Programs Director in May, June and August of 2007.
I was discharged on August 15, 2007.

RESPONDENT'S REASON FOR ADVERSE ACTION:
I was told by Anthony DeVore, Associate Director that I was not good at teaching front office.
I was told by Paulette Inu, Executive Director and Anthony DeVore, Associate Director that I was being discharged because I put more hours on my time card.

DISCRIMINATION STATEMENT:
I believe I have been discriminated against because of my national origin, Pakistan in violation of Title VII of the Civil Rights Act of 1964, as amended.

Din signed the Charge of Discrimination, and someone named Karen Heard also signed it as a witness. Plainly, the Charge contains only one allegation of discrimination: discrimination based on national origin. The Charge constitutes no evidence that Din exhausted administrative remedies as to his retaliation claim. And because Din filed the Charge after the alleged retaliation had already occurred, he cannot avail himself of the rule recognized by some courts that retaliation claims need not be exhausted if the retaliation occurs after the filing of an EEOC charge. *See Eberle*, 240 Fed. App'x at 628; *Lopez*, 368 S.W.3d at 705–06.

Finally, the summary-judgment record also contains an excerpt from Din's deposition in which he testified that he went to the EEOC on August 16 to complain about retaliation. He testified that he talked with Karen Heard at the EEOC and told her that he thought it was "a definite case of retaliation." He also testified that Heard typed all the typewritten information into the Charge of Discrimination, asked him to sign it, and then "she said this is done, we are going to do our investigation." Din also filed a copy of a 2010 email he sent to Heard asking her to amend his Charge to include the missing allegation of retaliation. At trial, Din testified that it was always his position that ATI was retaliating against him when it fired him.

We conclude that Din's evidence that he orally told an EEOC representative that ATI had retaliated against him is no evidence of exhaustion of administrative remedies. The EEOC representative who prepared the Charge of Discrimination noted only national-origin discrimination on the Charge, leaving the blank for retaliation unchecked. The narrative "Discrimination Statement" does not mention retaliation. Din signed the Charge under penalty of perjury. Accordingly, Din knew or was on notice that the EEOC understood his claim to be one for national-origin discrimination only, and he should have objected to or corrected the Charge before signing it. Under the Charge of Discrimination, the EEOC reasonably would have investigated only the allegation of national-origin discrimination, and nothing in the record shows that the EEOC actually investigated any other theory, such as retaliation. In *Poindexter*, the claimant argued that she intended her EEOC charge to include a retaliation claims, and that the omission of a retaliation claim was the EEOC's fault and should not be held against her. 306 S.W.3d at 811. The court rejected the argument, noting that the claimant verified her EEOC charge and should have protested its contents at that time if it was inaccurate. *Id*. We reach the same conclusion in this case.

We conclude that there is no evidence Din exhausted his administrative remedies with respect to his retaliation claim. Accordingly, the trial court lacked jurisdiction over that claim.

### 4. Appropriate appellate relief

ATI contends that our sustaining of ATI's first issue should result in rendition of a take-nothing judgment because there is no evidence that Din suffered any damages from the only other unlawful employment action found by the jury, the failure to promote Din. We proceed to analyze this argument.

Only one damages question was submitted to the jury. Question 3 asked, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Din for his damages,

–11–

if any, that resulted from such conduct [i.e., both the failure to promote Din and his firing]?" The jury found that Din suffered back-pay damages of $234,600, past emotional pain and suffering of $102,000, and future emotional pain and suffering of $102,000. Under the wording of the question, the jury could have found that these damages were caused by the denial of promotions to Din, the firing of Din, or some combination of the two. As previously noted, the trial judge reduced the back-pay award to roughly $83,000.

We agree with ATI that there is no evidence that the failure to promote Din caused him to suffer any compensable emotional pain and suffering. Mental anguish is compensable only if it causes a substantial disruption in the claimant's daily routine or causes a high degree of mental pain and distress. *Hancock v. Variyam*, 400 S.W.3d 59, 68 (Tex. 2013). In his testimony, Din indicated that his emotional pain and suffering stemmed entirely from his being fired by ATI. When asked if he had any emotional problems before he was fired, Din answered, "I was an okay man." We conclude that there is no evidence that Din suffered any compensable emotional pain and suffering as a result of his being passed over for promotion.

We conclude that there was some evidence, however, that Din suffered some back-pay damages as a result of being passed over for promotion. There is no direct evidence that Din would have received a raise if he had been promoted, or how much that raise would have been. And there was evidence that not every promotion at ATI involved a raise. But Din introduced records into evidence indicating that Hubner, Cedillo, and Coleman each received a raise when they were promoted to the director position. It appears that Cedillo received a raise of either $3.50 an hour or $4.50 an hour. (The relevant document in the record is not entirely legible.) The records indicate that Coleman got a raise of $3.50 an hour, and that Hubner got a raise of $2.77 an hour. So there is some evidence from which the jury could conclude that Din probably would have received a raise if he had been promoted. But even assuming Din would have

received a raise of $4.50 per hour if he had been promoted, the evidence indicates he would have earned this extra money only from April 16, 2007 (the effective date of Hubner's promotion) through August 15, 2007. This amounts to a few thousand dollars at most. The evidence does not support an award of back pay anywhere near the $83,000 awarded in the judgment. Because there is insufficient evidence to support the actual amount of damages awarded, but there is some evidence of a lesser amount of damages, we cannot render the take-nothing judgment requested by ATI. *See Guevara v. Ferrer*, 247 S.W.3d 662, 670 (Tex. 2007). Nor can we suggest a remittitur in this case, given that the evidence could have supported a range of answers as to Din's failure-to-promote damages.

Thus, we conclude that the submission of the retaliation claim to the jury was harmful error, but we cannot render a take-nothing judgment in ATI's favor. Nor can we order a new trial solely on the issue of Din's unliquidated damages from ATI's failure to promote him because liability is contested. *See* TEX. R. APP. P. 44.1(b). Accordingly, we must reverse the judgment in its entirety and remand for a new trial on both liability and back-pay damages relating to Din's failure-to-promote claim.

### 5.    Conclusion

We conclude that the trial court lacked jurisdiction over Din's retaliation claim, and that the retaliation claim must be dismissed. ATI's second and third issues on appeal also address Din's retaliation claim, and we need not address them.

## B.    ATI's other issues

### 1.    Issues that need not be addressed on appeal

Because we are reversing the judgment and remanding for further proceedings based on ATI's first issue, we need not discuss other issues raised by ATI that would yield only the same

relief. *See* TEX. R. APP. P. 47.1. Thus, we need not address ATI's issues concerning trial rulings admitting or excluding evidence, specifically issues four, seven, eight, nine, eleven, and twelve.

In ATI's fifth issue, ATI argues that the jury's findings on Din's failure-to-promote claim were against the great weight of the evidence, which is a challenge to the factual sufficiency of the evidence. *See PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 722 (Tex. App.—Dallas 2011, pet. denied) (describing standard of review for factual sufficiency). Although ATI includes one sentence near the end of its argument requesting reversal and rendition, it asks for remand in the alternative, and the substance of its argument is couched in terms of factual sufficiency. We conclude that ATI's fifth issue adequately presents only a factual-sufficiency challenge, and that we need not address it in light of our disposition of ATI's first issue.

In its tenth issue, ATI challenges the sufficiency of the evidence to support the award of damages for emotional pain and suffering. ATI also complains about the trial court's awards of interest on the capped compensatory and exemplary damages awarded in the judgment. Having reversed the award of damages in its entirety, we need not address these arguments.

ATI frames its sixth issue as "whether the jury's finding of malice was beyond the great weight of the evidence," but the substance of the argument is a no-evidence challenge to the jury's finding of malice, and ATI requests only reversal and rendition of the award of punitive damages. We construe ATI's sixth issue to be a legal-sufficiency challenge, and we address it below.

### 2. Legal sufficiency of the evidence of malice or reckless indifference

The jury answered "Yes" to Question 4, which asked, "Do you find by clear and convincing evidence that ATI engaged in the discriminatory practice that you have found in answer to Question 1 [national-origin discrimination in failing to promote Din] or Question 2

–14–

[retaliation] with malice or with reckless indifference to the right of Din to be free from such practices?" The charge defined "malice" as "a specific intent by ATI to cause substantial injury or harm to Din." And it defined "clear and convincing evidence" as "the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established." In the absence of an objection, we analyze the legal sufficiency of the evidence against the jury charge as given. *Jackson v. Axelrad*, 221 S.W.3d 650, 657 (Tex. 2007).

Because the standard of proof on this issue was clear and convincing evidence rather than a preponderance of the evidence, we use a heightened standard of appellate review. *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008). The supreme court has explained this standard as follows:

> In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard all evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*Id*. Because the retaliation claim should not have been submitted to the jury, we will limit our review to the evidence relating to Din's failure-to-promote claim.

Din directs our attention to the following facts, which are supported by the evidence. In 2007, ATI opted to promote three other people, in quick succession, to the position of director of the medical assistant program at the school where Din taught. The ATI personnel involved in some or all of those promotion decisions were executive director Michael Ackerman, associate executive director Anthony DeVore, director of education Zacharias Christodoulides, and assistant director of education Vincent Brooks. DeVore testified that a promotion usually did not

occur unless everyone involved in the process agreed. The three people who received the promotion were Richard Hubner, Karen Cedillo, and Claudette Coleman. Hubner was promoted in April 2007. Shortly thereafter, Hubner left the ATI school where Din taught, and Cedillo was promoted to the position in May 2007. She left soon after that, and Coleman was promoted to the position at the end of July 2007. Hubner was a doctor of osteopathy, and Cedillo and Coleman did not have college degrees. Din had an M.D. degree, and he argues that this shows he was more qualified to be the director than the three people who were actually promoted.

Din also relies on the deposition testimony of Cynthia Cleveland, which was read into the record at trial. Cleveland was a former student and student employee at the ATI school where Din taught. Cleveland testified that she was on the ATI campus in mid-July 2007 to visit some teachers. While she was standing outside in a designated smoking area, she overheard associate executive director DeVore and two other people talking. She recognized the other two people as ATI employees, but she did not know who they were. DeVore was talking about the position of "medical director of the school." Cleveland testified that she heard DeVore say that "a camel jockey had applied for a position there, and there would be no way the camel jockey would ever get that position." The people involved in that conversation laughed about DeVore's comment. Cleveland took the phrase "camel jockey" to be "[s]landerous" and "a racial slur." Finally, Din relies on his own testimony that DeVore made fun of Din's accent, talked about the way Din dressed, and "humiliated" Din on "numerous occasions." Din did not testify to any additional details about these incidents.

ATI points out that DeVore, who testified at trial by video deposition, denied making the "camel jockey" remarks described by Cleveland. ATI further argues that there was no evidence that DeVore knew that any action he took against Din was in violation of the law. ATI also argues that it adduced ample evidence that the people who collaborated to make the promotion

–16–

decisions did not consider Din's national origin as a factor in any way, and that there were legitimate reasons for ATI to prefer the other candidates over Din. ATI argues that the evidence shows that the other candidates were superior to Din because they were capable of teaching all the courses in the medical-assistant curriculum and Din was not. ATI also points out that Din's personnel file contained prior disciplinary matters that arose during his tenure at ATI, and it argues that these matters also constituted valid, non-discriminatory reasons for not promoting Din.

The jury was entitled to reject ATI's proffered nondiscriminatory reasons for not promoting Din, and to believe Cleveland's testimony that in mid-July 2007, DeVore made a comment that "a camel jockey" had applied for the promotion and would never get the position. The jury was further entitled to infer that DeVore was referring to Din when he made the "camel jockey" comment. Cleveland testified that DeVore was talking about the position of "medical director of the school" when he made the comment, and the jury could reasonably infer that this was the same promotion that Din sought, the position of director of the medical assistant program. The jury was also entitled to believe Din's testimony that DeVore sometimes ridiculed Din's accent and attire. Moreover, the jury could reasonably conclude from the conflicting evidence that Din was more qualified for the promotion than the other candidates that ATI promoted instead. Finally, the jury had the benefit of observing DeVore's demeanor via videotaped deposition and was entitled to assess the credibility of his testimony. Based on the evidence, the jury could reasonably form a firm belief or conviction that DeVore desired to prevent Din from being promoted on account of Din's national origin, and that DeVore used his influence as associate executive director to achieve that goal.

But the question remains whether the evidence described above is sufficient to support the jury's finding that, when ATI refused to promote Din, ATI acted either with malice—

meaning a specific intent to cause substantial injury or harm to Din—or with reckless indifference to Din's right not to be discriminated against.

First, we conclude there is no evidence of malice. Although the evidence supports the proposition that DeVore intended to cause Din some harm by preventing Din's promotion on account of Din's Pakistani origin, there is no evidence that DeVore intended to cause substantial injury or harm to Din. The evidence does not indicate that the denial of the promotion was likely to have any adverse effect on Din aside from possibly costing him a raise of a few dollars per hour. Although this is perhaps not a trivial harm, we conclude as a matter of law that this consequence was not a substantial injury or harm to Din, given that he was earning $24.52 an hour, or about $51,000 or $52,000 a year, at the time. Thus, even if DeVore specifically intended to injure Din by preventing him from getting any raise that might be associated with the promotion, the evidence does not support the inference that DeVore harbored the specific intent to cause substantial injury or harm to Din. There was no evidence of malice on the part of the other decision-makers. Thus, the evidence was legally insufficient to show by clear and convincing evidence that ATI's discriminatory failure to promote Din was committed with malice.

Next we consider whether there was legally sufficient evidence that ATI acted with reckless indifference to Din's legal rights. This element required proof not only that ATI discriminated against Din but also that ATI was aware that its conduct violated Din's legal rights. *See Ancira Enters., Inc. v. Fischer*, 178 S.W.3d 82, 94 (Tex. App.—Austin 2005, no pet.) ("[E]ven intentional retaliation or discrimination may not support punitive damages if the actor lacks the required awareness that such conduct is illegal."); *see also W. Telemarketing Corp. Outbound v. McClure*, 225 S.W.3d 658, 672 (Tex. App.—El Paso 2006, pet. granted, judgm't vacated w.r.m.) (following *Ancira Enterprises*). *Ancira Enterprises* was a retaliation case in

which the plaintiff recovered punitive damages. 178 S.W.3d at 87. The court of appeals held that there was legally sufficient evidence to support the award of punitive damages because there was evidence that the human-resources director who fired the plaintiff "was aware of at least the general requirements of anti-discrimination law" and also that the employer had promulgated a manual stating that no employee would be subject to retaliation for reporting sexual harassment. *Id.* at 94. In *West Telemarketing*, by contrast, the court of appeals held that there was no evidence to support an award of punitive damages because there was no evidence that the managers who committed race discrimination against the claimant "had attended any specialized training, were familiar with any specific policy of West, or otherwise could be charged with knowledge that their actions were unlawful." 225 S.W.3d at 673.

Din does not cite any evidence that would tend to show that DeVore or anyone else involved in the promotion process was actually aware that it is illegal to discriminate in promotions based on an applicant's national origin. We have conducted our own review of the record and found no evidence that DeVore or the other people involved in the promotion process were aware of the existence of antidiscrimination laws. The only potentially relevant evidence we have found in the record is a copy of an ATI employee handbook dated July 2005. The 47-page handbook contains a section entitled "Equal Employment Opportunity (EEO)," which contains statements that ATI would make all employment decisions without regard to race, sex, national origin, and other protected characteristics, and that ATI complies with all state and local laws governing nondiscrimination. But we have found no record evidence that DeVore or the other people involved in promotion decisions were familiar with the handout generally or its antidiscrimination provisions specifically.[8]

---

[8] The particular copy of the handbook that was introduced into evidence had been signed by Din on an unspecified date.

In sum, the only evidence that DeVore and the other relevant ATI personnel might have had actual awareness of antidiscrimination laws or ATI's antidiscrimination policies is the existence of a 2005 ATI employee handbook containing references to such laws and policies. There is no evidence to establish that the relevant ATI management employees had reviewed the handbook or were aware of the policies set forth therein before approving the series of promotions at issue in this case. Thus, the evidence falls short of the evidence in the *Ancira Enterprises* case, in which the relevant managerial employee was a human-resources director who was aware of the general requirements of the antidiscrimination laws and in which the employer's manual expressly forbade retaliation. 178 S.W.3d at 94–95. Unlike in *Ancira Enterprises*, the relevant personnel in this case were not employed in human resources, and there was no evidence that they had any knowledge of the antidiscrimination laws or ATI's antidiscrimination policies. Although the existence of the employee handbook may raise an inference that DeVore and the other relevant employees were aware of antidiscrimination laws and policies, the question is whether the evidence is sufficient for a reasonable factfinder to form a firm belief or conviction that they had such awareness. We conclude that existence of the handbook alone is not sufficient to support the jury's finding by clear and convincing evidence. Accordingly, we conclude the evidence was legally insufficient to support the jury's finding in answer to Question 4.

We sustain ATI's sixth issue on appeal.

### III.  ANALYSIS OF DIN'S ISSUES ON CROSS-APPEAL

Din raises two issues in his cross-appeal.

In his first issue, Din attacks the trial judge's ruling excluding all evidence of his attorney's fees. As discussed above, we are reversing the judgment and remanding for a new trial as to both liability and back-pay damages relating to Din's failure-to-promote claim. Under

these circumstances, we decline to address Din's first issue. *See First State Bank in Archer City v. Schwarz Co.*, 687 S.W.2d 453, 455 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (declining to address evidentiary rulings after deciding that instructed verdict had to be reversed).

In his second issue, Din argues that the trial judge erred by refusing to award Din prejudgment interest on Din's award of compensatory damages. Because we are reversing the judgment and remanding for a new trial on liability and back-pay damages relating to Din's failure-to-promote claim, and because the same issue will not necessarily arise during proceedings on remand, we decline to address Din's second issue.

## IV. CONCLUSION

We reverse the judgment of the trial court, render judgment dismissing Din's retaliation claim for lack of subject-matter jurisdiction, and render judgment that Din take nothing on his claims for mental-anguish damages and punitive damages. We remand the case for further proceedings only on Din's failure-to-promote claim consistent with this opinion.

/Kerry P. FitzGerald/

111522F.P05

KERRY P. FITZGERALD
JUSTICE

–21–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ATI ENTERPRISES, INC. D/B/A ATI
CAREER TRAINING CENTER,
Appellant/Cross-Appellee

No. 05-11-01522-CV    V.

SHAHBAZ F. DIN, Appellee/Cross-
Appellant

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-09-07508.
Opinion delivered by Justice FitzGerald.
Justices Fillmore and Richter participating.

In accordance with this Court's opinion of this date, we **REVERSE** the judgment of the trial court. We **RENDER** judgment dismissing appellee/cross-appellant Shahbaz F. Din's retaliation claim for lack of subject-matter jurisdiction, and we **RENDER** judgment that appellee/cross-appellant Shahbaz F. Din take nothing on his claims for mental-anguish damages and for punitive damages. We **REMAND** the case for further proceedings as to appellee/cross-appellant Shahbaz F. Din's claim for national-origin discrimination in failing to promote him.

It is **ORDERED** that appellant/cross-appellee ATI Enterprises, Inc. D/B/A ATI Career Training Center recover its costs of this appeal from appellee/cross-appellant Shahbaz F. Din.

Judgment entered October 28, 2013

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE