**AFFIRM; Opinion Filed February 6, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-12-00380-CV**

## IN THE INTEREST OF C.M., A CHILD

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-09-12986**

## MEMORANDUM OPINION
Before Justices FitzGerald, Lang, and Fillmore
Opinion by Justice Lang

This is an appeal of the trial court's "Final Decree of Divorce" respecting appellant Q.M.[1]

("Mother") and appellee M.M. ("Father"). In addition to providing for dissolution of the parties'

marriage, that judgment contains provisions pertaining to conservatorship of the parties' child,

C.M.

Mother appears pro se before this Court. Father has not filed a brief on appeal. We

construe Mother's appellate brief to assert that the portions of the trial court's judgment

respecting "custody" of C.M. should be "voided" because those provisions were (1) "against

[Mother's] will or agreement" and (2) based on "false accusations" that were "never proven."

For the reasons below, we decide Mother's issues against her. The trial court's judgment is

---

[1] In the trial court, this case was consolidated with a proceeding in which the termination of parental rights was at issue. Therefore, in this opinion, we use aliases to refer to the child and parents involved in this case. *See* TEX. R. APP. P. 9.8(b). The record shows appellant is known by several different names. The initials "Q.M." are based on appellant's name as it appears in the trial court's judgment in question.

affirmed. Because all dispositive issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.2(a), 47.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mother filed an "Original Petition for Divorce" on July 13, 2009. In her petition, she asserted in part (1) M.M. is the father of C.M. and (2) Mother and Father "should be appointed joint managing conservators" of C.M.

A bench trial was held on December 6, 2011. Both parties appeared and testified. Mother was represented by counsel and Father appeared pro se. On direct examination at the bench trial, Mother testified in part as follows:

Q. And are you married to [Father]?

A. Yes.

Q. And have we come to some agreements with regard to finalizing your divorce case?

A. Yes.

Q. Okay. Now, is the agreement that you and [Father] are going to get divorced and that the Court is going to make a finding that [C.M.] is the only child that is actually a child of [Father]?

A. Yes.
. . . .
Q. Okay. Now, with regard to [C.M.], have you agreed that [C.M.] will remain primarily with [Father] for the time being?

A. Yes, for the time being.

Q. Okay. Now, you understand when you say the time being, that we're talking about a final divorce order that finalizes your divorce case including [C.M.]; do you understand that?

THE COURT: Ma'am, you need to speak up and speak clearly.

[MOTHER]: I'm confused a little bit.

THE COURT: Okay.
. . . .

–2–

Q. [by Mother's counsel] Could you try and speak as clearly as you can.

A. I'm confused.

Q. Okay. This lady right here needs to take everything down. Now, do you understand that what we're talking about today is finalizing your divorce case?

A. Yes.

Q. And that [C.M.] is included in that divorce case?

A. Yes.

Q. And do you understand that in this divorce order [C.M.] will live primarily with [Father], that's the agreement that you made; is that correct?

A. Yes, but for the time being.

Q. Now, for the time being, do you understand that in order to change anything about the visitation or where [C.M.] lives, you will have to come back to court and ask the Court to modify the divorce order, you would have to say something has changed and I want to modify because of those changes?

A. Yes.

Q. Okay. So you're asking that a final order be entered today with regard to the divorce and [C.M.] but understanding if anything changes you could come back to this Court and ask for changes based on those changes?

A. Yes.

Q. Now, do you understand you would have to come back here and ask the Court for changes if at some point in the future you would like [C.M.] to either live with you or you want to change visitation with [C.M.]?

A. Yes.

Q. Okay. Are you certain you understand?

A. Little bit.

THE COURT: Ma'am, do you not understand?

[MOTHER]: Yeah, I do, but not really.

THE COURT: Okay. Tell me what you don't understand.

[MOTHER]: Like later on like she said it can change like once my situation changes, whatever.

THE COURT: You don't understand that?

[MOTHER]: No, we still have been divorced though, right?

THE COURT: Yes.

THE COURT: If you go back and ask for a change to the divorce decree doesn't mean you won't be divorced, you'll still be divorced. Is that the part you didn't understand?

[MOTHER]: Yes.

THE COURT: Okay. So any changes you want made about [C.M.] would not change the divorce itself, you would remain divorced but this Court would just continue to deal with [C.M.] because [C.M.] is under 18. So if there are things that needed to be changed about [C.M.], you could do that.

[MOTHER]: Yes.

Q. [by Mother's counsel] Is that clear?

A. Uh-huh.

THE COURT: Is that yes or no?

[MOTHER]: Yes.

THE COURT: Okay.

Q. [by Mother's counsel] Now, prior to you filing this divorce case had you lived in Dallas County and the state of Texas for six months?

A. Yes.

Q. Okay. And are you asking the Court to finalize your divorce case?

A. Yes.

Q. Based on the agreements that we're talking about, you want to get your divorce over and done with; is that right?

A. Yes.

Q. Understanding that your case about your other kids will still continue on in this court?

A. Okay.

Q. Okay. The CPS case will just keep going on, but this divorce will just deal with [Father] and [C.M.]; do you understand that?

A. Yes.

. . . .

Q. Okay. Now, as far as visitation with [C.M.], your other kids are placed with your mom and your sister right now, correct?

A. Yes.

Q. Are you asking that your visitation with [C.M.] take place at your mom's house on Saturdays from 9:00 to 3:00 so that [C.M.] can be around his brothers and sisters when you visit?

A. Yes.

. . . .

Q. [Mother], now you understand—I think you just asked me a question, so I want to make sure you understand the visitation with [C.M.] that we just described to the Court will remain in place until you come back to this Court and ask that it be changed somehow if you think your situation changes, you can come back here and say I would like [C.M.] to start spending the night with me or change it up somehow, but you'll have to come back to this Court and ask for that?

A. Yes.

[MOTHER'S COUNSEL]: Okay.

THE COURT: Okay. Anything else?

[MOTHER'S COUNSEL]: Nothing further, Your Honor.

Father testified on direct examination as follows:

Q. [by Mother's counsel] Did you hear what I asked [Mother]?

Q.   And do you agree to those things?

A.   Yes.

Upon conclusion of the parties' testimony, the trial judge stated, "All right. Based on the testimony presented and pleadings on file, I'll grant the divorce and render judgment in accordance with the agreement. It's set for dismissal on January 6th." At that point, the bench trial ended.

At 2:01 p.m.[2] on that same date, Mother filed a motion for new trial. In that motion, Mother asserted as follows:

> [Mother] would submit that she does not agree to the agreement proved up before this Court on or about November 6, 2011.[3] [Mother] did not understand that the Order to be entered would be a final Order regarding the child [C.M.], but instead believed that the orders regarding [C.M.] would be temporary only. [Mother] believed that the matter before the Court was solely a divorce matter. [Mother] is requesting a final trial on the matters relating to the child [C.M.].

The record shows Mother's motion for new trial was set for hearing on December 21, 2011. However, there is no record of a hearing on that date and the record is silent as to the disposition of Mother's motion.

The trial court's "Final Decree of Divorce" is dated December 29, 2011. That judgment states in part, "On Dec 06 [sic] 2011 the Court heard this case. . . . Petitioner, [Mother], although duly and properly cited, did not appear and wholly made default." Additionally, the judgment states in part "[i]t is ordered and decreed" that (1) the parties' marriage is dissolved, (2) Father is appointed sole managing conservator of C.M. with the exclusive right to designate C.M.'s primary residence, and (3) Mother is appointed possessory conservator of C.M.

---

[2] The record does not show what time the December 6, 2011 bench trial took place. A document in the clerk's record titled "Case Summary" contains an entry for that date stating "BENCH TRIAL (9:00 AM)."

[3] The record does not show any proceeding in this case on November 6, 2011, or any "agreement proved up" on or about that date.

This appeal timely followed.[4]

## II. MOTHER'S ISSUES

### *A. Standard of Review*

"Conservatorship determinations . . . are subject to review only for abuse of discretion." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). "A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles." *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). "A trial court also abuses its discretion by failing to analyze or apply the law correctly." *Id*. "The trial court generally does not abuse its discretion as long as some evidence of substantive and probative character exists to support the trial court's decision." *Gonzalez v. Gonzalez*, 331 S.W.3d 864, 866 (Tex. App.—Dallas 2011, no pet.); *accord In re J.G.L.*, 295 S.W.3d 424, 426–27 (Tex. App.—Dallas 2009, no pet.); *In re W.M.*, 172 S.W.3d 718, 725 (Tex. App.—Fort Worth 2005, no pet.).

Complaints about the legal and factual sufficiency of the evidence are not independent grounds for asserting error in conservatorship cases, but are relevant factors in deciding whether an abuse of discretion occurred. *See In re J.G.L.*, 295 S.W.3d at 427; *In re W.M.*, 172 S.W.3d at 725. "Legal sufficiency requires the evidence to be more than a scintilla when viewed in a light most favorable to the trial court's findings." *In re J.G.L.*, 295 S.W.3d at 427. When, as here, the trial court does not file findings of fact and conclusions of law, it is implied that the trial court made all findings necessary to support the trial court's order. *See, e.g.*, *In re A.L.S.*, 338 S.W.3d 59, 65 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

---

[4] Mother filed a December 22, 2011 notice of appeal challenging "the judgment signed by the Court on Dec [sic] 21, 2011" and a January 17, 2012 "Notice of Appeal Ammendent [sic]" challenging the trial court's December 29, 2011 judgment. The record does not contain a December 21, 2011 judgment or show that a judgment was signed on that date.

### B. Applicable Law

Rule 11 of the Texas Rules of Civil Procedure permits parties to enter into agreements announced in open court and entered of record. *See* TEX. R. CIV. P. 11. Further, the Texas Family Code contains provisions permitting parties to enter into enforceable agreements to resolve matters related to divorce and conservatorship. *See, e.g.*, TEX. FAM. CODE ANN. § 6.604 (West 2006) (settlement agreement on suit for dissolution of marriage); *id*. § 153.007 (West 2008) (agreed parenting plan for conservatorship and possession of child); *see also McLendon v. McLendon*, 847 S.W.2d 601, 608 (Tex. App.—Dallas 1992, writ denied) (compliance with Rule 11 satisfies requirements of enforceable agreement under Texas Family Code). However, "[a] valid consent judgment cannot be rendered by a court when consent of one of the parties thereto is wanting." *Burnaman v. Heaton*, 240 S.W.2d 288, 291 (Tex. 1951); *accord Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983); *Vineyard v. Wilson*, 597 S.W.2d 21, 23 (Tex. Civ. App.—Dallas 1980, no writ). A party may withdraw his consent at any time prior to the time of rendition. *Quintero*, 654 S.W.2d at 444. "[A] party withdrawing his consent must effectively communicate the withdrawal to the trial court." *Markarian v. Markarian*, No. 05–11–01076–CV, 2013 WL 226896, at *2 (Tex. App.—Dallas Jan. 15, 2013, no pet.) (citing *Baylor Coll. of Med. v. Camberg*, 247 S.W.3d 342, 346 (Tex. App.—Houston [14th Dist .] 2008, pet. denied)).

Rendition of a judgment is distinguishable from entry of a judgment. *Skidmore v. Glenn*, 781 S.W.2d 672, 673 (Tex. App.—Dallas 1989, no writ). "Judgment is rendered when the trial court officially announces its decision in open court or by written memorandum filed with the clerk." *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995). "Entry of judgment is a purely ministerial act by which the trial court's judgment is made of record and preserved." *Skidmore*, 781 S.W.2d at 673. "Agreed judgments, once rendered, are contracts between the

parties that excuse error and operate to end all controversy between the parties." *Pate v. Pate*, 874 S.W.2d 186, 188 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *see Pillitteri v. Brown*, 165 S.W.3d 715, 718 (Tex. App.—Dallas 2004, no pet.) ("A party cannot appeal from or attack a judgment to which he has consented or agreed absent an allegation and proof of fraud."); *see also Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 562 (Tex. App.—Dallas 1989, no writ) ("a party will not be allowed to complain on appeal of an action or ruling which he invited or induced").

Whether a trial court has rendered judgment is a question of fact. *Escobar v. Escobar*, 711 S.W.2d 230, 232 (Tex. 1986). The supreme court has explained that rendition of judgment is a "present act" that "decides the issues upon which the ruling is made." *S & A Rest. Corp.*, 892 S.W.2d at 858 (quoting *Reese v. Piperi*, 534 S.W.2d 329, 330 (Tex. 1976)). "The words used by the trial court must clearly indicate the intent to render judgment at the time the words are expressed." *Id.* (quoting *Reese*, 534 S.W.2d at 330). In determining whether the trial court rendered judgment, the judge's statement "must be read in context to determine its legal effect." *Skidmore*, 781 S.W.2d at 675.

"Recitals contained in the judgment are presumed true unless there is a conflict between the judgment and record." *Parks v. Developers Sur. and Indem. Co.*, 302 S.W.3d 920, 923 (Tex. App.—Dallas 2010, no pet.) (citing *MJR Fin., Inc. v. Marshall*, 840 S.W.2d 5, 9 (Tex. App.—Dallas 1992, orig. proceeding)).

"We liberally construe pro se pleadings and briefs." *In re N.E.B.*, 251 S.W.3d 211, 211 (Tex. App.—Dallas 2008, no pet.) (citing *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978)); *see* TEX. R. APP. P. 38.9. "[H]owever, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure." *In re N.E.B.*, 251 S.W.3d at 211–12.

## C. Application of Law to Facts

As described above, we construe Mother's appellate brief to present two issues. In her first issue, Mother contends the portions of the trial court's judgment respecting "custody" of C.M. were "against [Mother's] will or agreement." As described above, the trial court's judgment "ordered and decreed" (1) Father is appointed sole managing conservator of C.M. with the exclusive right to designate C.M.'s primary residence and (2) Mother is appointed possessory conservator of C.M. We construe Mother's complaint respecting "custody" to pertain to those provisions. *See* TEX. R. APP. P. 38.9. Additionally, while Mother does not address the standard of review in her appellate brief, her prayer for relief requests that the trial court's "decisions" be "redetermined" and that "the courts view all proceedings" and "re-enter" the decisions. Therefore, we construe her brief as asserting a legal sufficiency challenge respecting her consent to the "custody" terms in question, i.e., that the evidence is legally insufficient to support an implied finding that her consent to those terms existed at the time of the rendition of the challenged judgment. *See, e.g., ATI Enter., Inc. v. Din*, 413 S.W.3d 247, 256 (Tex. App.—Dallas 2013, no pet.) (construing issue to assert legal insufficiency based on arguments in appellate brief); *Dibon Solutions, Inc. v. Martinair Holland N.V.*, No. 05-11-01586-CV, 2013 WL 6671503, at *3 (Tex. App.—Dallas Dec. 18, 2013, no pet.) (same); *see also* TEX. R. APP. P. 38.9.

The judgment contains a recital that "On Dec 06 [sic] 2011 the Court heard this case. . . . Petitioner, [Mother], although duly and properly cited, did not appear and wholly made default." However, the record shows Mother was present, testified, and was represented by counsel at the December 6, 2011 bench trial. Thus, there is a conflict between the judgment and the record. Mother does not challenge or address the accuracy of the record. "Under these circumstances,

we hold that the record rebuts the presumption that the recitals contained in the judgment are true." *MJR Fin., Inc.*, 840 S.W.2d at 10; *see Parks*, 302 S.W.3d at 923.

The record shows that at the December 6, 2011 bench trial, Mother testified she understood and agreed that (1) she was "asking that a final order be entered today with regard to the divorce and [C.M.]"; (2) C.M. is included in the divorce case; (3) under the divorce order, C.M. will live primarily with Father; and (4) if Mother desires to "change anything about the visitation" or have C.M. live with her, Mother must "come back to court" and request a modification of the divorce order based on a change in circumstances. Thus, the record shows that at the bench trial, Mother agreed to the "custody" provisions she challenges on appeal.

Additionally, the record shows Mother filed a December 6, 2011 motion for new trial in which she asserted she (1) "does not agree to the agreement proved up before this Court on or about November 6, 2011"; (2) "did not understand that the Order to be entered would be a final Order regarding the child [C.M.], but instead believed that the orders regarding [C.M.] would be temporary only;" and (3) "believed that the matter before the Court was solely a divorce matter."[5]  However, to the extent Mother's motion for new trial was intended to constitute a withdrawal of her consent to the terms agreed upon at the bench trial, such withdrawal of consent was effective only if it was communicated to the trial court prior to rendition of the judgment in question. *See Quintero*, 654 S.W.2d at 444; *Markarian*, 2013 WL 226896, at *2. Mother's appellate brief does not address the timing of rendition of the judgment.

The record shows that after Mother testified as described above during the December 6, 2011 bench trial, Father testified as to his agreement. At the conclusion of the bench trial, the trial judge stated, "Based on the testimony presented and pleadings on file, I'll grant the divorce

---

[5] In her appellate brief, Mother does not mention her motion for new trial or specifically request that she be granted a new trial. Therefore, this opinion addresses no error respecting Mother's motion for new trial. *See* TEX. R. APP. P. 38.1(f), (i), (j).

–11–

and render judgment in accordance with the agreement. It's set for dismissal on January 6th." On this record, we conclude the trial judge's statement, read in context with Mother's request for a decision "today" as to "the divorce and [C.M.]" and the parties' testimony respecting their agreement on those matters, "clearly indicate[d] the intent to render judgment at the time the words [were] expressed." *S & A Rest. Corp.*, 892 S.W.2d at 858; *see Milwee v. Milwee*, 757 S.W.2d 429, 430–31 (Tex. App.—Dallas 1988, no writ) (judgment was rendered when trial court stated "I will grant the divorce and I will render judgment based on the agreements that I have read into the record"); *Skidmore*, 781 S.W.2d at 675 (context showed rendition occurred where trial judge stated in part "I'll enter an order approving the agreement"); *Baize v. Baize*, 93 S.W.3d 197, 200 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (trial court's statement "I'll grant your divorce today" expressed present intent to render judgment); *Henry v. City of Fort Worth*, No. 2-09-065-CV, 2010 WL 598594, at *5 (Tex. App.—Fort Worth Feb. 18, 2010, pet. denied) (mem. op.) (trial court's statement "I will approve the agreement and render it as an order of the court this day" constituted rendition); *cf. In re S.L.*, No. 05-11-00560-CV, 2012 WL 5355708, at *3–4 (Tex. App.—Dallas Oct. 30, 2012, no pet.) (mem. op.) (concluding trial court did not render judgment because (1) trial court's statements "I will grant the divorce," "I will approve the agreement," and "I will approve the property settlement" were "set in future tense" and (2) party's attorney reading agreement into record stated "[p]rior to this agreement becoming a final order, we are awaiting a letter or a memorandum of understanding from the paternal grandfather"); *Able Cabling Serv., Inc. v. Aaron-Carter Elec., Inc.*, 16 S.W.3d 98, 100–01 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (where trial court stated "judgment will be rendered in accordance with the terms dictated into the record" and "[y]a'll need to bring me whatever final judgment ya'll want," implication was that rendition would occur at signing).

We cannot agree with Mother that there is no evidence in the record showing her consent to the "custody" provisions in question at the time the trial court's judgment was rendered. Further, any attempt by Mother to revoke her consent after rendition of that judgment was without effect. *See Skidmore*, 781 S.W.2d at 675. Accordingly, we decide against Mother on her first issue.

Additionally, in light of our conclusion above, Mother is precluded from attacking the judgment on the ground that it was based on "false accusations" that were "never proven." *See Pillitteri*, 165 S.W.3d at 718; *Pate*, 874 S.W.2d at 188. Therefore, we decide Mother's second issue against her.

### III. CONCLUSION

We decide against Mother on her two issues. The trial court's judgment is affirmed.

/ Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

120380F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF C.M., A CHILD,
No. 05-12-00380-CV

On Appeal from the 301st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DF-09-12986.
Opinion delivered by Justice Lang.   Justices
FitzGerald and Fillmore participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee Martin Marez recover his costs of this appeal from
appellant Qwendolyn Marez.

Judgment entered this 6th day of February, 2014.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE